IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DAN DORAN and JULIE DORAN,<br><br>Plaintiffs,<br><br>vs.<br><br>WILLY SMITH; RYAN BALL; and DOES 1-10,<br><br>Defendants. | CV 4:18-cv-136-GF-SPW<br><br>ORDER GRANTING RYAN BALL'S MOTION FOR SUMMARY JUDGMENT |

Before the Court is Defendant Ryan Ball's motion for summary judgment (Doc. 41) on the claims Plaintiffs Dan and Julie Doran brought against him in their Amended Complaint (Doc. 17). The Court holds Ball is entitled to absolute prosecutorial immunity, grants his motion for summary judgment, and enters judgment in his favor. Because the Court finds the issue of absolute prosecutorial immunity dispositive, it does not address the remaining issues Ball raises in his motion.

I. **Background**

In September 2015, Loretta Day passed away and left her home in Great Falls, Montana, to her son, Dan Doran, and her two other children. (Doc. 50-8 at 7–9.) After a January 2016 fire destroyed the home, a City of Great Falls Police

1

Department investigation produced information that led Ryan Ball, a Deputy Cascade County Attorney, to file charges against Dan Doran for arson and theft. (Doc. 50 at ¶ 13.)

Based on the official police reports, Ball filed an affidavit in support of the information and charges with the District Court. (Doc. 42-2.) In the affidavit, Ball alleged the family had difficulty selling the house after Loretta's death. (Doc. 42-2 at 4.) He outlined the investigation the Great Falls police and fire departments conducted and the suspicious circumstances they uncovered surrounding the fire. (Doc. 42-2 at 4–5.) He stated that the morning of the fire, the police department received a phone call from an individual stating Dan set the fire and had set fires in the past when he needed money. Ball stated officers found the individual's information reliable because they confirmed Dan had been linked to other fire investigations in Great Falls. *Id.* Ball described an interview officers had with Dan where he claimed to have stayed in Helena the night of the fire, but cell phone tower data placed him much closer to Great Falls. Ball also stated detectives reviewed video surveillance footage from a local business that showed a dark-colored truck consistent with Dan's vehicle driving in Great Falls the night of the fire. *Id.* Based on this information, Ball moved the court for leave to file an information charging Dan with arson and theft (the theft stemming from alleged insurance fraud). (Doc. 42-2 at 5.)

The District Court found probable cause existed to grant Ball leave to file the information and issued a warrant for Dan's arrest. (Doc. 50 at ¶¶ 16–17.) Dan filed a motion to dismiss for lack of probable cause, and the court granted his motion with respect to the theft charge but denied it with respect to the arson charge. (Doc. 50 at ¶ 28.) The case proceeded to trial on the remaining arson charge, and a jury ultimately found Dan not guilty. (Doc. 50 at ¶¶ 35–36.)

Dan and Julie Doran subsequently advanced several claims against Ball for negligence, malicious prosecution, intentional and negligent infliction of emotional distress, false imprisonment, and violations of Dan's rights under the United States and Montana constitutions.[1] (Doc. 17 at ¶¶ 100–67.) They invoked this Court's federal question jurisdiction for their federal claims under 28 U.S.C. § 1343, 42 U.S.C. §§ 1983, 1988, and they invoked supplemental jurisdiction for their state claims under 28 U.S.C. § 1367. Ball filed a motion for summary judgment on all counts.

## II. Legal Standard

A party is entitled to summary judgment if it can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, the Court

---

[1] The Dorans also advanced claims against other defendants for assault and battery and defamation that they do not bring against Ball (Doc. 17 at ¶¶ 147–48, 159–60).

3

views the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)). A party asserting a fact is genuinely disputed generally must support the assertion by citing to the record. Fed. R. Civ. P. 56(c)(1).

### III. Discussion

Ball contends the Dorans' allegations against him all stem from actions he took within the scope of his prosecutorial duties, and therefore, the doctrine of absolute prosecutorial immunity shields him from the Dorans' claims. The Dorans counter Ball's actions fall outside the scope of prosecutorial duties.

The Supreme Court has long held prosecutors are entitled to absolute immunity from liability for actions "intimately associated with the judicial phase of the criminal process. *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under 42 U.S.C. § 1983. *Imbler*, 424 U.S. at 410. Nevertheless, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute prosecutorial immunity stems from "the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant . . . ." *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997). Accordingly,

4

"the touchstone is 'the nature of the function performed, not the identity of the actor who performed it.'" *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) (quoting *Kalina*, 522 U.S. at 127).

Absolute immunity applies when a prosecutor performs traditional functions of an advocate such as preparing to initiate judicial proceedings or appearing in court to present evidence in support of an application for a search warrant. *Kalina*, 522 U.S. at 125–26 (citing *Buckley*, 509 U.S. at 273; *Burns v. Reed*, 500 U.S. 478 (1991)). The traditional functions of an advocate also include "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273. However, the rule is not without its exceptions—absolute prosecutorial immunity does not apply when a prosecutor gives advice to police during a criminal investigation, *see Burns*, 500 U.S. at 496, when a prosecutor makes statements to the press, *see Buckley*, 509 U.S. at 277, or when a prosecutor acts as a complaining witness in support of a warrant application, *see Kalina*, 522 U.S. at 131.

In *Kalina*, a Washington state prosecutor commenced a criminal proceeding against a defendant by filing three documents: an information charging the defendant, a motion for an arrest warrant, and a third document—a "Certification for Determination of Probable Cause"—summarizing the evidence supporting the

charge. In the certification, the prosecutor personally vouched for the truth of the facts set forth under penalty of perjury. *Id.* at 120–21. The certification, however, contained two inaccurate factual statements. Washington eventually dropped the charges against the defendant, and the defendant brought a claim against the prosecutor under § 1983. *Id.* at 121–22.

After reviewing the case, the Supreme Court held that because the prosecutor personally attested to the truth of the facts contained in the certification, she was no longer acting as an advocate, but as a complaining witness. *Id.* at 130–31. And as a complaining witness, she was no longer entitled to absolute prosecutorial immunity. *Id.* at 131. The Court was careful to distinguish how several of the prosecutor's actions—"her drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges," "her presentation of the information and the motion to the court," and even "the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause"— were all functions of the advocate. *Id.* at 130. Even so, the Court explained, the advocate's judgment "could not affect the truth or falsity of the factual statements themselves. Testifying about facts is the function of the witness, not of the lawyer." *Id.*

This Court later used *Kalina* to distinguish the roles of complaining witness and advocate in *Fratzke v. Sanders County*, 2015 WL 4964200 (D. Mont. Aug. 19, 2015), *aff'd sub nom. Fratzke v. Mont. Fish, Wildlife, and Parks*, 716 Fed. Appx. 687 (9th Cir. 2018) (unpublished). There, the Court concluded a prosecutor's motion for leave to file an information against the defendants did not contain the sort of personal vouching like the certification in *Kalina*. In the prosecutor's motion, she stated "based on information and belief," the "investigative information developed and provided to her . . . demonstrates probable cause to believe that [the Fratzkes] committed the offenses charged." *Id.* at *5. The Court noted the prosecutor did not offer the probable cause evidence based on personal knowledge. Instead, she based her belief that probable cause existed upon information that others provided to her. *Id.* Therefore, the Court held the prosecutor was entitled to absolute prosecutorial immunity for filing the motion. *Id.*

Ball's actions here are nearly identical to the prosecutor's in *Fratzke* and clearly fall outside the scope of *Kalina*. Before detailing the factual background of the arson and theft allegations in his affidavit and motion for leave to file an information, Ball stated, "Based on the official reports of Great Falls Police Department, the undersigned deposes and says as follows . . . ." While Ball "depos[ed]" the factual statements in his motion for leave, he wrote he was basing

the factual statements on the official reports of the Great Falls Police Department. Moreover, at no point did Ball personally vouch for the truth of the facts set forth in the motion under penalty of perjury. *See Kalina*, 522 U.S. at 121. Instead, each of Ball's actions involved the exercise of the professional judgment of an advocate: Ball drafted the affidavit and motion for leave to file the information, determined the evidence against Dan Doran was strong enough to justify a probable-cause finding, decided to file charges, presented the information and the motion to the court, and selected the particular facts from the police reports to include in the affidavit and motion to provide the evidentiary support for finding probable cause. *See Kalina*, 522 U.S. at 130–31. Accordingly, even taking the Dorans' allegations as true, Ball is entitled to absolute prosecutorial immunity from the Dorans' federal claims stemming from statements Ball made in the affidavit.

The Dorans also allege Ball directed a detective to arrest Dan in violation of Dan's rights. Even taken as true, seeking an arrest warrant is an act intimately associated with the judicial phase of the criminal process and is also protected by prosecutorial immunity. *See Kalina*, 522 U.S. at 129; *see also Orbono v. Koch*, 30 F. Supp. 2d 840 (E.D. Pa. 1998) ("Arresting a suspect is a necessary step in the initiation of a criminal prosecution. As a result, it can hardly be separated from the core functions of a prosecutor."). It would be illogical to grant a prosecutor absolute immunity when seeking an arrest warrant but divest him of immunity

when he informs officers of the warrant's existence and requests that they carry it out. Ball enjoys prosecutorial immunity for actions he took in seeking to have officers effectuate Dan's arrest warrant.

Absolute prosecutorial immunity likewise shields Ball from the Dorans' state law claims. When exercising supplemental jurisdiction over state law claims, this Court applies state substantive law to the same extent as if it were exercising diversity jurisdiction. *Hubbard v. Sheffield*, 2013 U.S. Dist. LEXIS 109728, at *20 (D. Mont. Aug. 5, 2013) (citing *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000)). In Montana, protections afforded by the common law doctrine of prosecutorial immunity under federal and state law are coextensive. *See Renenger v. State*, 426 P.3d 559, 564–67 (Mont. 2018); *Rosenthal v. Cty. of Madison*, 170 P.3d 493, 499–500 (Mont. 2007).

Ball is entitled to absolute immunity for actions within the scope of his prosecutorial duties. The Dorans' state law claims against Ball for negligence, malicious prosecution, intentional and negligent infliction of emotional distress, false imprisonment, and for violating Dan's due process rights under the Montana Constitution all arise from actions Ball took within the scope of his prosecutorial duties. Those actions include his decision to file the affidavit and motion for leave to file an information, along with the statements he made therein. They also

include actions he took to have officers effectuate Dan's arrest warrant. Therefore, Ball is absolutely immune from these claims.

IV. **Conclusion and Order**

Ball is entitled to prosecutorial immunity from the Dorans' federal and state law claims relating to actions he took within the scope of his prosecutorial duties, which include the factual statements he made in his affidavit and motion for leave to file the information, along with actions he took to have officers effectuate Dan's arrest warrant. Accordingly:

**IT IS HEREBY ORDERED**:

1. Defendant Ball's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

2. All Counts in Plaintiffs Dorans' Amended Complaint (Doc. 17) against Defendant Ball are **DISMISSED**.

3. The Clerk of Court is directed to enter judgment in favor of Defendant Ball.

DATED this 6th day of August, 2019.

SUSAN P. WATTERS
United States District Judge